2009 Ark. 546

**Demetrius HEARD, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–647.**

Supreme Court of Arkansas.

Nov. 5, 2009.

Hancock, Lane & Barrett, by: Jonathan T. Lane, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellee.

ELANA CUNNINGHAM WILLS, Justice.

Demetrius Heard appeals his conviction for aggravated robbery following a bench trial. He asserts that the trial court erred by denying his motion for a directed verdict. We affirm the circuit court and reverse the court of appeals.

On October 18, 2007, Lonoke police responded to a 911 call from Tommy Townsend, who alleged that Heard pointed a pistol at him and demanded that Townsend repay a debt of two dollars.[1] Heard was arrested and charged with aggravated robbery. At trial, Townsend testified that Heard threatened him with a gun and demanded two dollars that he claimed Townsend owed him, and that he did, in fact, owe a debt to Heard. According to Heard's testimony, he and Townsend "got into it over two dollars" several times in the |₂past.

After the State rested its case during the bench trial, Heard moved for a directed verdict on the charge of aggravated robbery. Specifically, Heard argued that aggravated robbery requires evidence of a threat of violence and theft, which involves an intent to take the property of another; therefore, because Townsend owed him two dollars, there was no theft. Heard renewed his motion for a directed verdict at the close of the defense's case, citing *Daniels v. State*, 373 Ark. 536, 545, 285 S.W.3d 205, 211 (2008), in which this court held that "the law in Arkansas is that recovering gambling losses is not theft." The trial court again denied the motion, concluding that the holding in *Daniels* and

---

1. Townsend reported to the police officer responding to his 911 call that Heard pointed a "chrome pistol" at him. At trial, Townsend testified that he believed the gun was real at the time of the incident, but that Heard later apologized to him, and as a result Townsend came to believe that the gun Heard used was a toy.

a case cited therein-*Davidson v. State*, 200 Ark. 495, 139 S.W.2d 409 (1940)—were specifically limited to gambling losses. Finding Heard guilty of aggravated robbery, the trial court sentenced him to a term of ten years' imprisonment as a habitual offender.

Upon review, the court of appeals reversed Heard's conviction in *Heard v. State*, 2009 Ark.App. 425, 319 S.W.3d 292. The court of appeals stated that, "[t]he crucial question in this case is whether the prosecution presented substantial evidence to show that the two dollars was 'the property of another person'"—an element of theft under Ark.Code Ann. § 5–36–103(a)(1) (Repl.2006). *Id.* at 2, 319 S.W.3d at 293. Relying upon *Davidson, supra,* the court of appeals held that "there [was] no substantial evidence that [Heard] threatened violence in order to obtain 'the property of another'" based on Townsend's concession that Heard "had a right to the money without asserting any right of his own." *Id.* at 3, 319 S.W.3d at 294.

The State filed a petition for review of the court of appeals's decision, asserting that the decision was legally erroneous because it relied on and extended precedent that was limited to theft in the context of the recovery of gambling losses. Further, the State contended that the General Assembly expressly overruled this court's decision in *Daniels* with Act 460 of 2009. This court granted the State's petition for review; accordingly, we review the case as though it was originally filed in this court. *Hinojosa v. State*, 2009 Ark. 301, 319 S.W.3d 258.

For his single point on appeal, Heard argues that the circuit court erred in denying his motion for a directed ver-

dict because there was insufficient evidence to support his conviction for aggravated robbery. A challenge to the sufficiency of the evidence asserts that the verdict was not supported by substantial evidence. *Flowers v. State*, 373 Ark. 119, 121, 282 S.W.3d 790, 792 (2008). Substantial evidence is evidence of sufficient force and character that without resorting to speculation and conjecture compels with reasonable certainty a conclusion one way or the other. *Id.* We review the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.*

A person commits aggravated robbery if he commits robbery and "[r]epresents by word or conduct" that he is armed with a deadly weapon. Ark.Code Ann. § 5–12–103(a)(2) (Repl.2006). Under Ark.Code Ann. § 5–12–102(a), a person commits robbery if he "employs or threatens to immediately employ physical force upon another person" with the purpose of committing felony or misdemeanor theft.[2] Theft is committed when a person knowingly "[o]btains the property of another person, by deception or by threat, with the purpose of depriving the owner of the property." Ark.Code Ann. § 5–36–103(a)(2) (Repl.2006). Heard specifically argues as follows:

> Given that [Townsend] owed the money to [Heard], [Heard] must have a possessory interest in the money. That [Heard] has a possessory interest in the money reclaimed, even at gunpoint, the facts cannot support the elements of theft, and thus there was no theft. If there was no theft, there could be no robbery, which would preclude a conviction of armed robbery.

Ark.Code Ann. § 5–36–103(b)(4)(A).

---

**2.** Misdemeanor theft, as at issue in this case, involves property with a value of $500 or less.

In support of this argument, Heard relies entirely on *Daniels*. Prior to addressing *Daniels,* as an initial matter we note that Heard's focus on his own alleged "possessory interest" in the money is contrary to the statutory definition of "property of another."

Arkansas Code Annotated § 5–36–101(7), a provision of the subchapter governing theft, defines "property" as "severed real property or tangible or intangible personal property, including money or any paper or document that represents or embodies anything of value." The same statute, adopted as part of the 1975 Criminal Code, defines "property of another person" as "any property in which any person or the government other than the actor has a possessory or proprietary interest." Ark.Code Ann. § 5–36–101(8)(A). Heard's focus on his own asserted "possessory interest" is, therefore, misplaced. The applicable statute disregards Heard's claimed interest and focuses on the interest of *any other person than Heard.*

■ ᵢFor example, in *Phillips v. State*, 297 Ark. 368, 761 S.W.2d 933 (1988), the appellant challenged his conviction for theft under § 5–36–103, arguing that there was insufficient evidence that he took the "property of another person" of a value more than $200.00—required to meet the statute's definition of a Class C felony at the time—when only $200 taken from his victim's purse belonged to her, and she had an additional $100 belonging to her church due to her position as treasurer. This court rejected the appellant's argument, stating that

> "Property of another person means any property in which any person … has a possessory or proprietary interest." Here, the victim has a proprietary interest in the $200.00 which was her own money, and a possessory interest in the $100.00 which she was holding as trea-

surer for her church. Under this definition the evidence was sufficient to convict the appellant.

*Phillips*, 297 Ark. at 369, 761 S.W.2d at 933. The pertinent inquiry under our statutory definition, therefore, is not Heard's asserted interest in the property, but the interest of Townsend or any person other than Heard.

■ With the applicable statutory context in mind, we turn to Heard's argument that our holding in *Daniels*—specifically involving the recovery of gambling losses—applies to the recovery of a debt. In *Daniels,* the appellant was convicted of capital murder and aggravated robbery. According to evidence presented at trial, the appellant was gambling with the victim when he demanded, at knife-point, that the victim return his losses. After the victim refused to return the gambling losses, the appellant attacked and repeatedly stabbed him. At trial, defense counsel moved for a directed verdict on the aggravated robbery charge, contending ᵢ₆that, because the appellant only wanted the victim to return the specific money he had just lost gambling, there "was no intent to commit theft and aggravated robbery." *Daniels,* 373 Ark. at 540, 285 S.W.3d at 208. The trial court denied the motion; upon review, this court reversed, stating that "it is clear that, under this court's holding in *Davidson v. State*, [the appellant] could not be convicted of aggravated robbery if he was trying only to recover money that he had lost by gambling with [the victim]." *Id.* at 544, 285 S.W.3d at 211. Reviewing principles of replevin relied on in *Davidson* and Ark.Code Ann. § 16–118–103 as then codified, the court explained as follows:

> The holding in *Davidson* was based on the fact that, under Arkansas law, a person who loses money gambling may institute a replevin suit to recover that money at any time within ninety days of

the loss. "Replevin," the *Davidson* court noted, "is a possessory action, and it is essential to its maintenance that the plaintiff should have the right to the present possession of the property sought to be recovered." Therefore, although a person seeking to forcefully recover gambling losses may be guilty of assault or another crime, he or she cannot be guilty of robbery. Although it may be argued that the *Davidson* rule is not in the "public interest in a peaceful and orderly society," it is nonetheless still good law in Arkansas.

*Id.* (internal citations omitted). Consequently, we reversed the appellant's conviction for aggravated robbery.[3]

Heard's reliance on *Daniels* is misplaced. *Daniels* specifically involved the recovery of gambling losses. The decision was based on Ark.Code Ann. § 16–118–103 and the principles of replevin discussed in *Davidson.* Here, however, there is no evidence or assertion that Heard attempted to recover a gambling loss from Townsend.

Further, this court has long-held that "[r]eplevin is *not* an action for the collection of *debt,* but upon the contrary is a possessory action for the recovery of *specific personal property.*" *Spear v. Ark. Nat'l Bank of Hot Springs,* 111 Ark. 29, 163 S.W. 508, 509 (1914) (emphasis added).

The crucial question in this case is whether the State provided sufficient evidence to show that the money Heard demanded from Townsend was the property of another personal element of theft under § 5–36–103(a)(1). In this regard, the decision of the Wisconsin Supreme Court in *Edwards v. State,* 49 Wis.2d 105, 181 N.W.2d 383 (1970) involving "self-help" to recover a debt is illustrative and comports with Arkansas case law distinguishing the availability of an action in replevin to recover specific property from action to collect a debt. In *Edwards,* as an issue of first impression, the Wisconsin Supreme Court examined the "question of whether the intent to collect a debt at gun point

---

**3.** The General Assembly expressly overruled *Daniels* in Act 460 of 2009, stating in Section 3 that

> it is the intent of this Act to overrule *Daniels v. State,* 373 Ark. 536, 285 S.W.3d 205 and its interpretation of § 16–118–103(a)(1). That case and its interpretation of replevin and the holding in *Davidson v. State,* are contrary to the public policy of this State.

Act 460 added a new subsection to § 16–118–103, the statute providing for the recovery of gambling losses within ninety days, as follows:

> The replevin suit provided for in subdivision (a)(1)(A) of this section does not excuse a person from liability for, or create a defense under § 5–2–601 et seq. to any crime of violence with which he or she may be charged as a result of conduct to recover money or property so lost.

Ark.Code Ann. § 16–118–103(a)(1)(B) (Supp. 2009). Section 16–118–103 was also amended to specify that a person may recover their gambling losses by "obtaining a judgment ordering the return of the money or property"

after a successful court action. *See* Ark.Code Ann. § 16–118–103(a)(1)(A)(i) (Supp.2009).

Finally, Act 460 also amended Title 5 to insert Ark.Code Ann. § 5–2–622 (Supp.2009), in the subdivision governing justification, to provide that "[i]t is no defense to a prosecution for a crime of violence that a person was seeking recovery or replevin of a gambling debt or loss in circumstances in which civil recovery is permitted by § 16–118–103."

The language of Act 460 is limited to the recovery of gambling losses. Additionally, the Act did not contain an emergency clause; therefore, it did not become effective until July 31, 2009, after the incident, trial, and conviction in this case. The Act does not state that it should be applied retroactively, and this court does not apply an act retroactively unless the General Assembly expressly provides that it should be so applied. *See, e.g., State v. Ross,* 344 Ark. 364, 39 S.W.3d 789 (2001). Accordingly, Act 460 has no direct impact on this appeal, and we must address Heard's argument that *Daniels* applies in or should be extended to situations involving the recovery of a debt.

negates the necessary intent to steal and thus is a defense to a charge of robbery." *Edwards,* 181 N.W.2d at 387. The *Edwards* court agreed with the apparent majority of jurisdictions at that time, that "the reclamation of *specific removable property* at gun point by the owner may not be armed robbery," although "such self-help may and generally does constitute a lesser crime than robbery." *Id.* at 387 (emphasis added). However, the court found an exception involving money and debt, stating that it could not "accept the view of the majority cases which see no distinction between the reclaiming of one's own property by force and the taking of money by force from a debtor to repay a debt which is presently owing." *Id.* Instead, the court stated that "the *intent to steal* is present when one at gunpoint or by force secures specific money which does not belong to him in order to apply it by such self-help *to a debt owed to him."* *Id.* (emphasis added).

The *Edwards* court explained that "[u]nless the accused can trace his ownership to *specific coins and bills* in the possession of the debtor, *the debtor is the owner of the money in his* ₈*pocket* and it is theft to take it from his possession." *Id.* at 388 (emphasis added). The court discussed the importance of the distinction "between specific personal property and money in general" as follows:

> A debtor can owe another $150 but the $150 in the debtor's pocket is not the specific property of the creditor. One has the intention to steal when he takes money from another's possession against the possessor's consent even though he also intends to apply the stolen money to a debt. The efficacy of self-help by force to enforce a bona fide claim for money does not negate the intent to commit robbery. Can one break into a bank and take money so long as he does not take more than the balance in his

savings or checking account? Under the majority rule the accused must make change to be sure he collects no more than the amount he believes is due him on the debt. A debt is a relationship and in respect to money seldom finds itself embedded in specific coins and currency of the realm. Consequently, taking money from a debtor by force [to] pay a debt is robbery. The creditor has no such right of appropriation and allocation.

*Id.*

The *Edwards* court's refusal to extend a "claim of right" defense to the collection of a debt now appears to be the majority view. *See United States v. Becerril–Lopez,* 541 F.3d 881, 893 (9th Cir.2008); *People v. Tufunga,* 21 Cal.4th 935, 90 Cal. Rptr.2d 143, 987 P.2d 168, 177 (1999). As stated by the New Jersey Superior Court, the contrary position "is little more than a relic of days long past," and "not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence." *State v. Ortiz,* 124 N.J.Super. 189, 305 A.2d 800, 801–02 (1973).

Our case law on this issue has never extended as far as Heard suggests. Whether or not the issue was one involving gambling losses, our case law has recognized the defense Heard asserts only in attempts to recover specific property. *See, e.g., Daniels, supra* (same, specific ₁₀money lost gambling); *Davidson, supra* (same, specific money lost gambling); *Lane v. Alexander,* 168 Ark. 700, 271 S.W. 710 (1925) (U.S. treasury bonds); *Brown v. State,* 28 Ark. 126 (1873) (two bales of cotton). Additionally, irrespective of whether specific property is at issue, the adoption of our 1975 Criminal Code placed the focus not on any claim of right assert-

ed by a defendant, but upon the interest of the victim or any other person than the defendant, the "actor."[4] As stated by the court in *Edwards, supra,* "the debtor is the owner of the money in his pocket." 181 N.W.2d at 388. Townsend thus had a proprietary interest in any money he had to repay Heard. As the State argued at trial, the same cannot be said for the winner in an illegal gambling transaction; the winner has no interest in gambling winnings sought to be reclaimed by the loser because the transaction is void. *See Cohen & Co. v. Austin,* 172 Ark. 723, 290 S.W. 579 (1927); *see also United States v. Brown,* 13 U.S.C.M.A. 485, 494, 33 C.M.R. 17 (1963) (stating that intent to steal is lacking in the recovery of illegal gambling losses because "the law recognizes no title or right to possession in the winner").

For these reasons, we refuse to extend the holding in *Daniels* and *Davidson* to the collection of debts; the circuit court correctly held that these cases do not apply to an attempt to recover a debt. In sum—despite Heard's assertion that he had a "possessory interest" in money that Townsend owed him—Townsend had a proprietary or possessory interest in any

money that he had with which to repay Heard when Heard robbed him; thus, Townsend was "a person ... other than the actor" with "a possessory or proprietary interest" in the money. Accordingly, under the plain language of § 5–36–101(8)(A), the money that Heard demanded from Townsend was the "property of another person." On this basis, the State presented sufficient evidence that Heard committed theft, and, therefore, robbery and aggravated robbery.[5]

Circuit court affirmed; court of appeals reversed.

HANNAH, C.J., dissents.

JIM HANNAH, Chief Justice, dissenting.

I respectfully dissent. According to the majority, "the crucial question in this case is whether the State provided sufficient evidence to show that the money Heard demanded from Townsend was the property of another person—an element of theft under § 5–36–103(a)(1)." I disagree. The crucial issue in this case is whether the State sustained its burden of proof that

---

4. Other jurisdictions have recognized that the adoption of new codes can supersede claim-of-right defenses to aggravated robbery. *See, e.g., State v. Hobbs,* 64 P.3d 1218 (Utah Ct. App.2003).

5. Quoting from the dissent in a decision by the court of appeals involving the defense of voluntary intoxication in *Ellis v. State,* 267 Ark. 690, 590 S.W.2d 309 (Ark.Ct.App.1979), the dissent here states that "aggravated robbery is a specific-intent crime" and, in turn, the State must prove the "conscious object" to commit theft. We agree with the dissent that robbery is a specific-intent crime and that the State was required to provide sufficient evidence of Heard's intent to commit theft. Here, the State provided sufficient evidence that Heard purposely threatened Townsend with the conscious object of obtaining money that Townsend had in his pockets—the

property of another under the statutory definition of § 5–36–101(8)(A). Further, the dissent states that the "analysis in *Edwards* is not applicable under our statutes because Arkansas requires specific intent," and that, "under the analysis in *Edwards,* the intent to commit theft is implied if the defendant has the intent to deprive the person permanently of property and the property sought is not the specific property belonging to the defendant." The *Edwards* court, however, framed the crucial question in that case as "what is the nature of the *specific intent* necessary to establish the crime of robbery," as required by Wisconsin statutes and common law, noting that the "intent must be to steal." 181 N.W.2d at 387 (emphasis added). Therefore, contrary to the dissent's analysis of *Edwards,* that case did involve specific intent, and thus, is persuasive and applicable.

Heard acted with the purpose of committing a theft, an element of robbery under § 5–12–102(a) (Repl.2006). Heard set out his argument for directed verdict on two possible bases. First, he asserted that there "has to be a specific intent, i.e., to make—take money that is not yours." Second, he asserted that "if the money is yours, then it can't be theft." The majority focuses on the second issue, and it is the issue that Heard addresses most fully on appeal.[1] However, he also argues on appeal that "the facts cannot support the elements of theft." An element of theft is specific intent to commit theft. Heard had to have the conscious object to commit a theft. The issue on which the appeal turns, is whether the State proved the requisite intent. It did not.

"[A]ggravated robbery contains an element of intent to commit theft." *Matthews v. State*, 2009 Ark. 321, at 4, 319 S.W.3d 266, 268. "There is no doubt that aggravated robbery is a specific intent crime." *Ellis v. State*, 267 Ark. 690, 699, 590 S.W.2d 309, 315 (1979). To prove aggravated robbery, the State had to prove robbery. Ark.Code Ann. § 5–12–103(a) (Repl.2006). To prove robbery, the State had to prove that Heard, "with the purpose of committing a . . . theft," employed or threatened to employ physical force. Ark.Code Ann. § 5–12–102(a) (Repl.2006). Purposely is defined as acting with the "conscious object to engage in the conduct," in this case, theft. *See* Ark. Code Ann. § 5–2–202(1) (Repl.2006). Therefore, the State had to prove that it was Heard's conscious object to commit a theft.

At trial, Townsend testified that Heard "demanded money from me which I owed him." The State argues on appeal that appellant pointed a gun[2] at the victim, Tommy Townsend, and demanded that Townsend give him two dollars, which Townsend admitted that he owed appellant. Thus, the State offered evidence to show that Heard's intent was to obtain repayment of money owed, and that he attempted to do so by threat of force. However, no evidence was offered to show that it was Heard's conscious object to obtain the property of another. *See* Ark. Code Ann. § 5–36–103(a)(1) (Supp.2007).

The majority quotes *Edwards v. State*, 49 Wis.2d 105, 181 N.W.2d 383, 387 (1970), where the Wisconsin Supreme Court considered the "question of whether the intent to collect a debt at gun point negates the necessary intent to steal and thus is a defense to a charge of robbery." The court in *Edwards* also stated as follows:

> Unless the accused can trace his ownership to specific coins and bills in the possession of the debtor, the debtor is the owner of the money in his pocket and it is theft to take it from his possession with the intention to permanently deprive him of its possession regardless of what other motive or intention the accused has.

*Edwards*, 181 N.W.2d at 388. Thus, under the analysis in *Edwards*, the intent to commit theft is implied if the defendant has the intent to deprive the person permanently of property and the property sought is not specific property belonging to the defendant. The majority concludes

---

1. I do agree with the majority that neither *Daniels v. State*, 373 Ark. 536, 285 S.W.3d 205 (2008), nor *Davidson v. State*, 200 Ark. 495, 139 S.W.2d 409 (1940), is relevant because those cases explain that recovery of gambling losses in Arkansas is not theft due to application of replevin law and the effect on

intent. Replevin is not at issue in the present case.

2. It is clear that the pistol Heard used was actually a toy; however, Townsend believed it was a real pistol at the time.

that, because the exact coins or bills lent were not being sought, Townsend had a possessory interest in the money, and this made Heard's demand a demand for the property of another. However, the definition of when property is that of another is not determinative on this appeal under Arkansas law. Under our statutes and cases, intent cannot be negated or implied. Rather, under our statutory scheme, what is determinative is Heard's state of mind at the time of the incident. The State argued and proved that his intent was to recover money he had loaned Townsend. The analysis in *Edwards* is not applicable under our statutes because Arkansas requires specific intent. The State failed to prove intent to commit theft.

If the majority is holding that specific intent may be negated, is no longer required, or that intent may now be implied under the analysis set out in discussing *Edwards*, the statutory definition of the intent to prove theft must be altered. That must be done by the General Assembly. This court is "without authority to declare an act to come within the criminal laws of this state by implication." *Heikkila v. State*, 352 Ark. 87, 90, 98 S.W.3d 805, 807 (2003) (citing *Dowell v. State*, 283 Ark. 161, 162, 671 S.W.2d 740, 741 (1984)). We should follow the law. That is our overarching duty. *Griffen v. Arkansas Judicial Discipline & Disability Comm'n*, 355 Ark. 38, 57, 130 S.W.3d 524, 536 (2003).

Certainly, Heard's conduct in pointing a pistol at Townsend's face and demanding repayment of a loan is reprehensible and inexcusable conduct. Under these facts Heard is likely guilty of a crime. However, it is clear that the law on aggravated robbery has been misapplied in the present case. The court of appeals reversed and dismissed this case because the State failed to prove requisite intent. That decision should be affirmed.